Lundberg, Admx., *v.* Bovaird et al., Appellant.

46

Argued April 14, 1931.

Before Trexler, P. J., Keller, Linn, Gaw-
throp, Cunningham, Baldrige and Drew, JJ.

*W. N. Conrad,* for appellants, cited: Henderson v. Ferrell, 183 Pa. 547; McMillan, v. Titus, 222 Pa. 500; McIntosh v. Rapp, 233 Pa. 513.

*Edward Friedman,* and with him *Charles J. Margiotti, W. M. Gillespie* and *S. C. Pugliese,* for appellee, cited: Lillibridge et al. v. Lackawanna Coal Co., 143 Pa. 293; Delaware, Lackawanna and Western Railroad Co. v. Sanderson, 109 Pa. 583; Robinson v. Pierce, 278 Pa. 372.

OPINION BY LINN, J., July 8, 1931:

By a deed made in 1920, the owners of a farm in Jefferson County did "grant, bargain and sell unto the said second parties, their heirs and assigns forever all the coal underlying" a certain part of the John Bovaird farm. The grantees were Albin Lundberg, Emil Lundberg and Joseph Bovaird; the Lundbergs were brothers, and one of them was brother-in-law to Bovaird. The deed also granted the right to mine and remove coal without leaving surface support, etc., etc. The grantees agreed to pay on a royalty basis for coal mined, with provision for a minimum of $300 per year; in case of default in payment of royalty, after sixty days written demand, the grantors "may forfeit and terminate this lease and this lease shall thereupon become null and void and not binding on either parties except the first parties may recover for royalties then unpaid." The grantees also "may at any time surrender this lease and thereupon be released from all liability on this lease except for coal then actually mined." Notwithstanding the use of the word "lease" it is well settled that there was a sale

of the coal in place: Robinson v. Pierce 278 Pa. 372, 375.

The grantees were tenants-in-common. They entered, and, trading as Lundberg Brothers, a partnership, mined and sold coal. The mining operation was small. At some time prior to March, 1923 one of the partners, Albin Lundberg "sold" his interest in the partnership to Edwin Bovaird; subsequently he and Joseph Bovaird abandoned the works and took up other occupations, Emil Lundberg, the plaintiff, removed from the mine some of the personal property that had been used by the partnership and took it to another mine. No mining was done on the tract from March, 1923 (the last payment of royalty was made March 15, 1923) to September 18, 1924. On that date the parties, who in 1920 had sold the coal in place, now evidently under the impression that their grantees had abandoned the tract, made, what was called in the evidence, a lease for the coal remaining under the same land to the Northwestern Mining and Exchange Company. That company then entered and mined coal.

In June, 1926, Emil Lundberg, (since deceased), filed this bill against the parties who made the deed in 1920, and the heirs of such as had since died. The bill recited the grant to plaintiff and his co-tenants, and performance by them to March, 1923; that, in September 18, 1924, the original grantors had leased the coal in the same land to the Northwestern Mining and Exchange Company which had taken possession of the mines and also the equipment and personal property remaining on the premises, and was removing coal. He alleged that he had been damaged by the tort, and prayed that defendants (the grantors and heirs of deceased grantors) be ordered to restore to him "the one-third interest in the leasehold secured to him under the lease of June, 1920, and the rights, privileges and franchises therein granted;" or, in the

alternative, that defendants be ordered to pay him damages in a specified sum.

The defendants answered and denied that the grant made in 1920 was in force in September, 1924; they averred that grantees had abandoned the mine; that plaintiff had removed equipment, fixtures and improvements, that the mine had caved in, and that two of the tenants-in-common, Albin Lundberg and Joseph Bovaird had "refused to be any longer associated in the mining and removal of coal."

After hearing the parties and their witnesses, the chancellor found that the plaintiff had not abandoned or surrendered his right as a tenant-in-common; that the tract still contained mineable coal, of the value of $5,648.07; from that sum he deducted the royalties of $450 which accrued during the year and a half from the date of the last royalty payment in March, 1923, to the time in September, 1924, when the Northwestern Company entered, leaving $5,198.07; which he found to be the value to the tenants-in-common of the coal in place, and of that sum, he awarded one-third, or $1,-732.69, to the plaintiff. He also awarded to the plaintiff, what he called "plaintiff's share of equipment, fixtures and improvements," amounting to $263 making a total award of $1,995.69. The defendants have appealed.

It is to be observed that no question was made of the form of procedure, nor is there any complaint as to parties. Appellants present a somewhat limited complaint as to the measure of damages in the following finding made by the chancellor: "We now come to estimate the damages to which plaintiff is entitled. We have seen that the lessees are entitled to the value of 13¼ acres of coal in place, which Mr. Robinson, engineer, estimates at $426.27 per acre, or $5,648.07, less minimum royalty of $450 during the continuance of the lease for one year and a half, from March 15,

1923, the date of the last check to September 18, 1924, when the defendants confiscated the demised premises, or a balance of $5198.07, one-third of which or $1732.69 was due plaintiff as his share on September 18, 1924.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"We subjoin the following tables of damages: Net amount due for coal wrongfully taken by defendants from plaintiff ...... $1,732.69
Plaintiff's share of equipment, fixtures .. 263.00

"Total ........................ $1,995.69"

Defendants filed an exception in the court below to that finding and the exception was dismissed. The record shows that in proceedings below, under Rule 55, to determine what parts of the evidence should be printed on appeal, counsel for appellants stated to the court "that his argument on the 'measure of damages' would not controvert the facts found by the court but would be confined to the legal aspects of the case bearing upon the determination of that question." In consequence of the order made pursuant to that stipulation, we do not have in the printed record the evidence taken on the subject. We also note that defendants have not assigned for error the dismissal of the exception. The point is therefore not before us for review.

The court also concluded that "no partnership was ever known in the grant out of which this controversy arises," and no exception was taken to that conclusion. We think, however, that the evidence is undisputed that there was a partnership in the mining and selling of the coal, and that, on this bill—which was not a bill for winding up the affairs of the partnership—plaintiff is not entitled to recover the item of $263, partnership assets.

Concerning what is said in the record about abandonment of their estates in the coal by two of the tenants-

in-common, it is sufficient now to note that each of them testified that he took his copy of the so-called lease and delivered it to William Bovaird, one of the grantors, intending thereby to surrender his undivided interest in the unmined coal in place; the conduct of the grantors in thereafter making a lease to another who entered and mined coal, was such evidence of acceptance of the surrender as would defeat the claim that those two tenants-in-common had not effectually surrendered their interests in the coal in place; the transaction was executed, though the surrender was not in writing; the statute of frauds does not apply to executed contracts: Parry v. Miller, 247 Pa. 45.

As the decree provided that upon payment of the amount ordered by the chancellor "the title to the coal and coal rights referred to in the bill shall revert to the defendants or their successors in title" a point of which no complaint is made—the effect of the proceeding is to divest the plaintiff of the interest he had in the coal as fully as if he had surrendered his right thereto under the provision in the deed.

In the circumstances, we affirm the decree with the modification that the amount ordered payable be reduced by deducting the sum of $263 (partnership assets) and direct that each party shall pay his own costs, both in the court below, and in this court.